**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|  |  |  |
|---|---|---|
| HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Case No. 14-cv-6196 |
| v. | ) ) | Judge Robert M. Dow, Jr. |
| COASTAL INTERNATIONAL, INC., GES EXPOSITION SERVICES, INC., METROPOLITAN PIER AND EXPOSITION AUTHORITY, GREENWICH INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, LEXINGTON INSURANCE COMPANY, MARCIA DEMPE, as Guardian of the Person and Estate of CHRISTOPHER LINDROTH, a Disabled Adult, and FIRST MIDWEST BANK/WEALTH MANAGEMENT CO., as co-Guardians of the Estate of CHRISTOPHER LINDROTH, a Disabled Adult, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs initiated this interpleader action under 28 U.S.C. § 1335 to resolve claims to the

proceeds of their insurance policies.  Before the Court are certain Defendants' motions to dismiss

[65, 69, 73, 74, and 75].  For the reasons stated below, the Court denies Defendants' motions to

dismiss without prejudice and stays this action pending the appeals of *Dempe ex rel. Lindroth v.*

*Metropolitan Pier and Exposition Authority, et al.*, Case No. 08 L 7378, Circuit Court of Cook

County, Illinois, Law Division.  The Court directs the parties to file joint status reports no later

than 7 days after (1) the Illinois Appellate Court rules on the *Lindroth* appeals and (2) the Circuit

Courts issue any further orders in the Coverage Actions that may affect this litigation.

1

## I.    Background[1]

### A.    The Underlying State Suit

This action arises from state court judgments entered in an underlying state court suit, *Dempe ex rel. Lindroth v. Metropolitan Pier and Exposition Authority, et al.*, Case No. 08 L 7378 in Cook County, Illinois, Law Division.  Christopher Lindroth, through his co-guardians Marcia Dempe and First MidWest Bank/WealthManagement Co. ("Lindroth"), filed this action in July 2008 against Metropolitan Pier and Exposition Authority ("MPEA") and GES Exposition Services for injuries sustained while working as a carpenter at a trade show ("ASI 2007") at McCormick Place in Chicago.  MPEA was the owner of McCormick Place, and GES was hired by the trade show manager, ASI Show Inc., to be the official services provider for ASI 2007. Both MPEA and GES filed third-party complaints against Coastal International, Inc.—Lindroth's employer as well as the Exhibitor Appointed Contractor ("EAC") and non-official contractor for ASI 2007—seeking contribution and/or indemnity to the extent that they were found liable for Lindroth's injuries.  In March 2014, the jury found in favor of Lindroth and against GES, returning a judgment of $22,197,500 ("*Lindroth* Judgment").  The jury also returned a verdict in

<hr>

[1] The facts are drawn from Plaintiffs' amended complaint and are taken as true for purposes of deciding Defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  See *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999); *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007).  The Court also takes judicial notice of the records in three relevant state court actions: (1) *Dempe ex rel. Lindroth v. Metropolitan Pier and Exposition Authority, et al.*, Case No. 08 L 7378, Circuit Court of Cook County, Illinois, Law Division (the "underlying suit"); (2) *GES Exposition Servs., Inc. v. Hartford Fire Insurance Co., et. al.*, Case No. 10 CH 53756, Circuit Court of Cook County, Illinois, Chancery Division (the "GES Coverage Action"); and (3) *Metropolitan Fair and Exposition Authority v. Hartford Fire Insurance Co., et. al.*, Case No. 10 CH 50687, Circuit Court of Cook County, Illinois, Chancery Division (the "MPEA Coverage Action").  A court may take judicial notice of matters of the public record, including court records, on a motion to dismiss brought under Rule, 12(b)(1), Rule 12(b)(6), or an abstention doctrine.   See *Long*, 182 F.3d at 554 (allowing a district court ruling on a 12(b)(1) motion to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists'); *Lumen Const., Inc. v. Brant Const. Co.*, 780 F.2d 691, 697 n.4 (7th Cir. 1985) (finding that "the official record of the parallel state case is a proper object for judicial notice" on a motion to abstain); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) (holding that a district court may take judicial notice of matters of public record under Rule 12(b)(6)).

favor of GES and against Coastal on GES's contribution claim, finding Coastal liable for 75% of the judgment (Coastal Judgment) and GES liable for 25% of it (GES Judgment). Lastly, the jury found in favor of MPEA against Lindroth, finding that MPEA was not liable for his injuries. GES, Coastal, and Lindroth have filed appeals that remain pending in state court ("Lindroth Appeals").

B. **The Insurance Policies**

Various insurance policies, all issued prior to Lindroth's injuries, are relevant to the satisfaction of the Lindroth Judgment. Specifically, Plaintiffs issued the following three policies to Coastal.

1. Hartford Fire issued a commercial general liability insurance policy to Coastal, providing a $1 million per occurrence limit ("Hartford Fire Policy").

2. Twin City issued an umbrella liability insurance policy to Coastal, providing a $5 million per occurrence limit ("Twin City Policy").

3. Hartford Underwriters issued a worker's compensation and employer's liability insurance policy to Coastal, providing a $1 million per occurrence limit ("Employer's Liability Policy").

Also relevant are the following policies, issued by three of the Defendants to GES and MPEA.

1. Greenwich Insurance Company issued a commercial general liability insurance policy to GES's parent company, providing a $1 million per occurrence limit ("Greenwich Policy").

2. American Home Assurance Company issued an umbrella liability insurance policy to GES's parent company, providing a $25 million per occurrence limit ("American Home Policy").

3. Lexington Insurance Company issued a commercial general liability insurance policy to MPEA, providing a $2 million per occurrence limit ("Lexington Policy").

C.      **Pending State Coverage Actions**

While the parties were litigating the underlying action and well before the entry of judgment, GES and MPEA initiated declaratory judgment actions, seeking to clarify the scope of Plaintiffs' policies and the extent to which they covered GES and MPEA in relation to the underlying suit.

1.      **GES Coverage Action**

In December 2010, GES sued Hartford Fire, Twin City, Coastal, and Lindroth in *GES Exposition Servs., Inc. v. Hartford Fire Insurance Co., et. al.*, Case No. 10 CH 53756, Circuit Court of Cook County, Illinois, Chancery Division (the "GES Coverage Action"), seeking a declaratory judgment that Hartford Fire and Twin City owe a defense and coverage to GES as an additional insured under the Hartford Fire and Twin City Policies and that Coastal had a duty to indemnify and defend GES.  In August 2013, on cross-motions for summary judgment, Judge Larsen concluded that GES was an additional insured on the Hartford Fire and Twin City Policies and that both insurers owed a duty to defend GES in the underlying suit.  In September 2013, on Defendants' amended motion for summary judgment, Judge Larsen clarified the nature of the coverage and the duty to defend under both policies, explaining that under her ruling, proceeds available to GES under the Hartford Fire Policy would apply in excess of GES's Greenwich Policy; that Twin City would share excess coverage on a pro rata basis by limits with GES's American Home Policy; and that Hartford Fire and Twin City generally did not have a duty to defend additional insureds to which they provided excess coverage if another insurer owed a duty to defend (noting that Greenwich was already defending GES in the underlying suit).  She also concluded that a declaration concerning the duty to indemnify was premature.  In January 2014, on Hartford Fire and Twin City's motions for reconsideration and clarification, she confirmed that GES was an additional insured on the Twin City Policy; that the $5 million

limit of liability of the Twin City policy applied to GES as an additional insured; and that Hartford Fire and Twin City did not breach a duty to defend. In December 2014, American Home petitioned to intervene in the GES Coverage Action.

### 2. MPEA Coverage Action

In November 2010, MPEA also brought a declaratory judgment action against Hartford Fire, Twin City, Coastal, and Lindroth in *Metropolitan Fair and Exposition Authority v. Hartford Fire Insurance Co., et. al.*, Case No. 10 CH 50687, Circuit Court of Cook County, Illinois, Chancery Division (the "MPEA Coverage Action"). In May 2013, on cross-motions for summary judgment, Judge Novak found that MPEA was an additional insured under the Hartford Fire and Twin City Policies; that Hartford Fire had a duty to defend MPEA in the underlying suit; and that Hartford Fire was not estopped to assert any coverage defense or limitation, including its other insurance clause, with respect to MPEA's coverage as an additional insured as to the underlying suit. She denied Twin City's motion for summary judgment with respect to the declaration concerning the limit of liability of the Twin City Policy potentially applicable for indemnification of MPEA as an additional insured. And she denied MPEA's motion for summary judgment with respect to the declaration it sought that Coastal breached its duty to defend and indemnify MPEA in the underlying suit.

### D. Order of Distribution in the Underlying Suit and Appeal

After the Circuit Court entered a judgment in the underlying injury suit, it entered an Order of Distribution, ordering, in part, that Lindroth be authorized to accept $1 million from XL Reinsurance Group on behalf of Greenwich, as GES's general liability insurance carrier. It also ordered that Hartford Underwriter receive $500,000 from the partial satisfaction of the Lindroth Judgment to be applied to its statutory workers' compensation lien.

### E. Federal Interpleader Action

Plaintiffs filed this interpleader action a few months after the Circuit Court entered the Lindroth Judgment and while the coverage actions were pending. Generally speaking, an interpleader action allows a plaintiff to initiate a lawsuit compelling two or more adverse claimants to litigate their claims to a single fund in the plaintiff's custody or possession. The amended complaint alleges that Plaintiffs' collective coverage of $6 million (the "Stake") is subject to multiple competing claims. More specifically, Plaintiffs allege that (1) Lindroth has asserted or may assert a claim as a judgment creditor of GES; (2) Coastal has asserted or may assert that it is entitled to the limits of the Twin City Policy to satisfy part of the Lindroth Judgment against GES entered against Coastal; (3) Coastal has asserted or may assert that it is entitled to the limits of the Hartford Fire and Twin City Policies to satisfy MPEA's claim for defense costs incurred in the underlying suit; (4) GES and MPEA has asserted or may assert that they are additional insureds entitled to the limits of the Hartford Fire and Twin City Policies to satisfy part of the Lindroth Judgment; (5) GES's insurers, Greenwich and/or American Home, and MPEA's insurer, Lexington, has asserted or may assert that they are entitled to subrogation and/or contribution rights against the Hartford Fire and Twin City Policies; (6) MPEA has asserted or may assert that it is an additional insured entitled to proceeds of the Hartford Fire and Twin City Policies if the not guilty verdict against it in the underlying suit is reversed on appeal; and (7) MPEA has asserted or may assert that, under the Hartford Fire and Twin City Policies, it is entitled to contractual indemnity from Coastal for defense costs it incurred in the underlying suit.

Plaintiffs allege that unless conflicting and potentially adverse claims to Plaintiffs' Stake are resolved in a single proceeding, Plaintiffs will be subject to multiple lawsuits in various forums and risk suffering multiple liabilities and/or inconsistent rulings as to potential liabilities under their three policies. Accordingly, they seek certainty as to the parties' respective rights to

Plaintiffs' Stake by way of this interpleader action. Their amended complaint requests (1) an order granting Plaintiffs leave to deposit their Stake into the Court's registry, which the Court granted shortly thereafter, see [61]; (2) an order requiring each Defendant to interplead its claims to Plaintiffs' stake; (3) an order enjoining each Defendant from participating in any other action against Plaintiffs for the recovery of any part of Plaintiffs' Stake; (4) orders enjoining the GES and MPEA Coverage Actions pending resolution of this interpleader action; (5) an order discharging Plaintiffs from any obligation to pay any indemnity, post judgment interest or any other costs associated with the Lindroth Judgment; and (6) an order for any other relief that the Court may deem just and proper.

American Home moves to dismiss under Rule 12(b)(1). American Home, Lexington, MPEA, GES and Greenwich each move to dismiss or, alternatively, ask the Court to abstain under the *Wilton-Brillhart* or *Colorado River* abstention doctrines. Finally, Lexington, American Home, GES, and Greenwich, move to dismiss under Rule 12(b)(6). Lindroth opposes dismissal on equitable grounds.

## II.    Legal Standards

### A.      Rule 12(b)(1)

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject matter jurisdiction. The party asserting jurisdiction bears the burden of establishing that jurisdiction is satisfied. *Glaser v. Wound Care Consultants, Inc.*, 570 F.3d 907, 913 (7th Cir. 2009). In evaluating a motion brought under Rule 12(b)(1), the court accepts as true the plaintiff's well-pleaded allegations and draws all reasonable inferences in favor of the nonmoving party. *Long*, 182 F.3d at 554. The court also may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to

determine whether in fact subject matter jurisdiction exists." *Id.* (quoting *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir. 1993)) (internal quotation marks omitted).

## B.    Abstention Doctrines

### 1.    Colorado River

Generally, "the pendency of an action in [a] state court is no bar to proceedings concerning the same matter in the Federal court," and federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Huon v. Johnson & Bell, Ltd.*, 657 F.3d 641, 645 (7th Cir. 2011) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 818 (1976)). *Colorado River* creates a narrow exception where there are "exceptional circumstances," and where "the clearest of justifications" warrant abstention and deferral to a concurrent state court case. See *Huon*, 657 F.3d at 645–46 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 25–26 (1983)) (internal quotation marks omitted). A court conducts a two-part inquiry to determine whether abstention is appropriate under *Colorado River*. *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 498 (7th Cir. 2011). First, it evaluates whether the concurrent federal and state cases are parallel. *Id.* Second, it considers whether exceptional circumstances justify abstention.

### 2.    *Wilton-Brillhart*

The *Colorado River* exceptional circumstances test is not applicable to every claim; it yields to statutes granting courts greater discretion to abstain. See *Wilton*, 515 U.S. at 286; *NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 379 (3d Cir. 1995). *Wilton-Brillhart*, which takes its name from *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), and *Brillhart v. Excess Ins. Co. of Amer.*, 316 U.S. 491 (1942), establishes that the Declaratory Judgment Act is one such statute. This abstention doctrine applies when "'a federal court [is called upon] to proceed in a declaratory judgment suit where another suit is pending in state

8

court presenting the same issues, not governed by federal law, between the same parties.'" *Arnold v. KJD Real Estate, LLC*, 752 F.3d 700, 707 (7th Cir. 2014) (quoting *Brillhart*, 316 U.S. at 495). In such a case, the question for the district court is "whether the questions in controversy between the parties to the federal suit * * * can better be settled in the proceeding pending in the state court." *Arnold*, 752 F.3d at 707 (quoting *Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495)) (internal quotation marks omitted).

*Wilton-Brillhart* abstention is rooted in principles of comity. As the Supreme Court explained in *Brillhart*,

> Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided.

*Brillhart*, 316 U.S. at 495. *Wilton-Brillhart* abstention also is rooted in federal courts' "unique and substantial discretion in deciding whether to declare the rights of litigants" under the Declaratory Judgment Act—"an enabling Act, which confers a discretion upon the courts rather than an absolute right upon the litigant." *Wilton*, 515 U.S. at 287; see also *Arnold*, 752 F.3d at 707; 28 U.S.C. § 2201(a) (providing that a court "*may* declare the rights and other legal relations of any interested party seeking such declaration") (emphasis added). "[T]he propriety of declaratory relief in a particular case will depend upon a circumspect sense of its fitness informed by the teachings and experience concerning the functions and extent of federal judicial power." *Arnold*, 752 F.3d at 707 (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Unlike most other actions, "there is nothing automatic or obligatory about the assumption of jurisdiction by a federal court to hear a declaratory judgment action." *Arnold*, 752 F.3d at 707 (quoting *Wilton*, 515 U.S. at 288).

There is no exact test governing abstention under *Wilton-Brillhart*, but the Supreme Court and the Seventh Circuit have offered several guiding factors. These include (1) the scope of the pending state court proceeding and the nature of the defenses available there; (2) whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding; (3) whether the underlying dispute concerns a matter of state law; and (4) whether necessary parties have been joined and whether such parties are amenable to process in that proceeding. See *Brillhart*, 316 U.S. at 495; *Wilton*, 515 U.S. at 283; *Arnold*, 752 F.3d at 707.

### C.      Rule 12(b)(6)

The purpose of a Rule 12(b)(6) motion to dismiss is not to decide the merits of the case; a Rule 12(b)(6) motion tests the sufficiency of the complaint. *Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). As previously noted, reviewing a motion to dismiss under Rule 12(b)(6), the Court takes as true all factual allegations in Plaintiff's complaint and draws all reasonable inferences in his favor. *Killingsworth*, 507 F.3d at 618. To survive a Rule 12(b)(6) motion to dismiss, the claim first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the claim must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). However, "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555) (ellipsis in original). The Court reads the complaint and assesses its plausibility as a whole. See *Atkins v. City of Chi.*, 631 F.3d 823, 832 (7th Cir. 2011); *cf. Scott v. City of Chi.*, 195 F.3d 950, 952 (7th Cir. 1999) ("Whether a complaint provides notice, however, is determined by looking at the complaint as a whole.").

## III.    Analysis

### A.    Rule 12(b)(1) and Subject Matter Jurisdiction

American Home moves to dismiss under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction under the interpleader statute, 28 U.S.C. § 1335. Section 1335 gives district courts original jurisdiction over interpleader actions where three requirements are satisfied. First, the stake must exceed $500 in value. 28 U.S.C. § 1335(a). Second, there must be minimal diversity, meaning two or more of the adverse claimants must be of diverse citizenship as defined in 28 U.S.C. § 1332(a) or (d). 28 U.S.C. § 1335(a)(1); *State Farm Life Ins. Co. v. Jonas*, 775 F.3d 867, 869 (7th Cir. 2014). Third, the plaintiff must deposit the stake into the registry of the court. 28 U.S.C. § 1335(a)(2).

The first and second requirements are satisfied because there is minimal diversity between two or more adverse claimants, and the amount in controversy is more than $500. At issue is the deposit requirement. Beginning with Plaintiff Hartford Underwriters, the Court finds that the third requirement is unsatisfied because Hartford Underwriters has deposited nothing with the Court's registry. Hartford Fire deposited the $1 million associated with its policy, and Twin City deposited the $5 million associated with its policy, but Hartford Underwriters has deposited nothing. As GES's worker's compensation insurer, it paid the $1 million limit under its policy to GES on August 15, 2014. Having already paid the limit of its policy, it has contributed nothing to the Stake. According to its own allegations, it asserts no claims to the

Stake other than its statutory lien on the Lindroth Judgment. Accordingly, the Court dismisses the complaint with respect to Hartford Underwriters for lack of subject matter jurisdiction.

As for the remaining Plaintiffs, American Home argues that the Court lacks jurisdiction because Plaintiffs did not deposit the Stake when they filed their original complaint. Citing *State Farm Life Ins. Co. v. Jonas*, 775 F.3d 867, 869 (7th Cir. 2014), American Home argues that jurisdiction only exists if a plaintiff deposits the stake and files the complaint simultaneously. The Court disagrees. In *State Farm*, the plaintiff filed an interpleader action regarding the proceeds of a life insurance policy. A defendant argued that, under Texas law, a statutory interest rate applied rather than a lower contractual interest rate. In a combined order and opinion, the court addressed which rate applied and granted State Farm's motion to deposit the stake. See *State Farm Life Ins. Co. v. Jonas*, 2013 WL 2629015, at *3 (S.D. Ind. June 11, 2013). On appeal, the Seventh Circuit held that the district court lacked jurisdiction under 28 U.S.C. § 1335 when it addressed the merits of the defendant's argument. As the court of appeals explained, jurisdiction does not exist based on mere "promises to pay rather than contemporaneous deposits." *State Farm Life Ins. Co.*, 775 F.3d at 869. Rather, § 1335(a)(2) "requires cash on the barrel-head." *Id.* The court declined to instruct the district court as to which rate applied because "[a] remand with any instruction other than dismissal depends on the existence of subject-matter jurisdiction. Section 1335 does not supply jurisdiction."[2] *Id.* at 869.

The facts of this case are distinguishable. Plaintiffs filed their complaint [1] on August 12, 2014. Over one month later, they filed an amended complaint [63] and a simultaneous motion for leave to deposit the Stake [55], which the Court promptly granted in a Rule 67 order [62]. See Fed. R. Civ. P. 67 (requiring a party to obtain leave of court before depositing money

---

[2] For reasons inapplicable here, the Seventh Circuit also declined to provide instructions on the applicable rate because it found that there was no case or controversy. Accordingly, it remanded only with instructions to dismiss for lack of subject matter jurisdiction.

with the court's registry).  The jurisdictional problem in *State Farm* is absent here because this Court did not address the merits pre-deposit (when there was no jurisdiction).  Instead, it addresses Defendants' motions post-deposit.  Even if jurisdiction did not exist with respect to the original complaint, it does exist with respect to the amended complaint because of the simultaneous motion for leave to deposit the Stake.  American Home argues that Plaintiffs cannot cure the original jurisdictional defect because jurisdiction is determined only as of the filing of the complaint.  The Court again disagrees.  First, American Home cites *Smith v. Widman Trucking & Excavating, Inc.*, 627 F.2d 792, 799 (7th Cir. 1980), for the principle that the existence of jurisdiction is determined as of the filing of the complaint, but *Smith* is inapposite.  It holds that if a court has jurisdiction when the original suit was filed, subsequent events do not divest the court of jurisdiction.  *Id.*  Second, courts frequently permit plaintiffs to perfect under 28 U.S.C. § 1335 by moving to deposit the funds at a later time.  See *Legacy Inv. & Mgmt., LLC v. Susquehanna Bank*, 2013 WL 5423919, at *5 (D. Md. Sept. 26, 2013) (an interpleader stakeholder that does not immediately deposit the disputed funds with the Court is entitled to perfect jurisdiction by moving to deposit the funds at a later time, as long as there is no persistent failure to perfect subject matter jurisdiction) (citation and internal quotation marks omitted); *Knox v. Am. Gen. Life & Accident Ins. Co.*, 2003 U.S. Dist. LEXIS 15236, 14, 2003 WL 22056301 (S.D. Ind. Aug. 28, 2003) ("In the event that a stakeholder fails to deposit funds when filing the interpleader action, a court may give the party an opportunity to comply before dismissing interpleader for failure to satisfy a jurisdictional requirement."); *Travelers Ins. Co. v. Estate of Garcia*, 2003 WL 1193535, at *3 (E.D.N.Y. Feb. 4, 2003) ("the failure to deposit the stake with the Court's registry alone would not warrant outright dismissal of the interpleader action for lack of jurisdiction.  Rather, it would be error to dismiss the complaint without

affording an opportunity to cure.") (citation and internal quotation marks omitted). Accordingly, the Court concludes that it has jurisdiction with respect to Hartford Fire and Twin City.

### B.     Abstention

Having found subject matter jurisdiction, the Court now considers whether to abstain from exercising it.  GES, Greenwich, American Home, MPEA, and Lexington all ask the Court to abstain based on the pendency of the GES and MPEA Coverage Actions.  As a threshold matter, the Court must consider which abstention doctrine, if any, applies—*Wilton-Brillhart*'s discretionary standard or *Colorado River*'s exceptional circumstances standard.

Although the Seventh Circuit has not stated which standard applies to statutory interpleaders, it has indicated that *Wilton-Brillhart* applies to Rule 22 interpleaders, strongly suggesting that it applies here as well.  Consistent with this conclusion is Seventh Circuit case law preceding *Colorado River* and *Wilton*.  In *Koehring Co. v. Hyde Const. Co.*, 424 F.2d 1200 (7th Cir. 1970), the Seventh Circuit held that a district court has discretion to dismiss an action in statutory interpleader on grounds of equity and comity when the interests of the stakeholder and all claimants will be adequately protected in a pending state court proceeding.  *Id.* at 1202.  Characterizing interpleader as an "ancient equitable remedy" conferring considerable discretion on a district court, the Seventh Circuit reasoned that

> [i]t should also be within the discretion of the interpleader court, sitting as a court of equity, to decline to exercise jurisdiction when there is an action pending elsewhere wherein the liability of the stakeholder to all claimants may be fairly and conclusively determined. In such a case, the fear of multiple vexation and inconsistent liability which serves as the premise for interpleader relief may be absent; this, in addition to the prior lodging of jurisdiction in another tribunal, may properly convince the interpleader court that it is both safe and prudent to stay its hand. If these conditions are met, there is no reason to believe that the interpleader statute comples (*sic*) the exercise of jurisdiction, thus depriving the court of the discretion traditionally exercised to deny equitable relief when there is another adequate remedy 'at law.'

*Id.* at 1204 (citation and quotation marks omitted).  The court added that "to encourage a practice of denying the state courts of general jurisdiction the right to enforce their own judgments through the device of federal interpleader would be most disruptive of a healthy federalism."  *Id.* at 1205.

The Third Circuit also has addressed the application of *Wilton-Brillhart* to statutory interpleaders.  In *NYLife Distributors, Inc. v. Adherence Grp., Inc.*, 72 F.3d 371, 379 (3d Cir. 1995), the Third Circuit began by noting that "historically and under the statute, interpleader is a suit in equity * * * * A federal interpleader court, therefore, by the nature of its jurisdiction proceeds with broad discretion."  *NYLife Distributors, Inc.*, 72 F.3d at 380.  It then applied the clear statement rule, reasoning that courts retain broad equitable discretion unless Congress clearly indicates otherwise.  *Id.* (citing *Weinberger v. Romero–Barcelo*, 456 U.S. 305 (1982)).  Examining the text, structure, purpose and legislative history of § 1335, the Third Circuit found no such statement.  A number of courts have adopted its reasoning.  See *Hartford Life Ins. Co. v. Solomon*, 910 F. Supp. 2d 1075, 1083 (N.D. Ill. 2012); *Glenclova Inv. Co. v. Trans-Res., Inc.*, 874 F. Supp. 2d 292, 306 (S.D.N.Y. 2012); *Great W. Cas. Co. v. Fredrics*, 2011 WL 5326236, at *1 (W.D.N.C. Nov. 4, 2011); *Q3 JMC, Inc. v. Mason Plastics, Inc.*, at *1 (M.D.N.C. June 20, 2000); *Crommelin v. Woodfield*, 1998 WL 188101, at *3 (S.D. Fla. Mar. 2, 1998).  See also *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) (affirming a district court's abstention from declaratory relief requested in an interpleader action and suggesting that interpleader jurisdiction is discretionary).  *Koehring* and *NYLife Distributors* together persuade the Court to apply *Wilton-Brillhart*'s discretionary standard in determining whether to abstain.

Under *Wilton-Brillhart* and its progeny, the Court first considers the scope of the pending state court proceedings and the nature of the defenses there.  The scope of the Lindroth Appeals

and the Coverage Actions overlaps almost completely with the scope of this action. The state courts adjudicating the Coverage Actions have spent years addressing whether GES and MPEA are additional insureds under Plaintiffs' Policies; whether and to what extent Plaintiffs have a duty to defend GES and MPEA in the underlying suit; whether and to what extent Plaintiffs have a duty to indemnify GES and MPEA with respect to the Lindroth Judgment; and whether Plaintiffs' policies are primary or excess and contributory or non-contributory in relation to each other and to the policies provided by Greenwich, Lexington, and American Home. In order to allocate these same funds, the Court would have to adjudicate these same issues based on the same insurance contracts.[3] The same body of law—state contract, insurance, and tort law— would govern the adjudication of these issues and any applicable defenses. Accordingly, the first factor weighs in favor of abstention.

The Court next considers the second and fourth factors combined—that is, (2) whether the claims of all parties in interest can satisfactorily be adjudicated in the state court proceedings and (4) whether necessary parties have been joined and whether such parties are amenable to process in that proceeding. The parties here are substantially similar to the parties in the GES and MPEA Coverage Actions. Following dismissal of Hartford Underwriters, the parties here are Hartford Fire, Twin City, GES, MPEA, Coastal, Lexington, Greenwich, American Home, and Lindroth. The parties in the GES and MPEA Coverage Actions are Hartford Fire, Twin City, GES, MPEA, and Coastal; American Home has petitioned to intervene in the GES Coverage Action. In other words, three parties are involved in this action but not the Coverage Actions: Greenwich (GES's insurer), Lexington (MPEA's insurer), and Lindroth, who is only a

---

[3] Plaintiffs claim that they do not seek to litigate priority of payments among carriers in this interpleader, but that is beside the point. Plaintiffs, who are willing to pay up to the limits of their policies, may be indifferent as to the identity of the payee, but the payees certainly are not; one of the main functions of the interpleader action would be to allow the adverse claimants an opportunity to determine the priority and allocation of the funds.

nominal party in the Coverage Actions. The absence of Greenwich and Lexington from the Coverage Actions is immaterial because those parties themselves have asked the Court to abstain. Presumably, they believe that their interests are adequately represented in the Coverage Actions by GES and MPEA, and, in any event, their motions effectively waive arguments against abstention based on their absence in the parallel state actions. Only Lindroth remains.

Lindroth argues that he cannot satisfactorily pursue his rights in state court. Specifically, he contends that he is barred from actively participating in the state Coverage Actions or filing a claim against any of the insurers in general.[4] He argues that federal court is therefore the only forum where he can assert a claim to the Stake. It is true that Illinois law generally prohibits a tort victim from directly suing a tortfeasor's insurer until there is a final judgment against the tortfeasor. See, *e.g.*, *Holmes v. Fed. Ins. Co.*, 820 N.E.2d 526, 529 (Ill. App. Ct. 2004); *Zegar v. Sears Roebuck & Co.*, 570 N.E.2d 1176, 1177 (Ill. App. Ct. 1991) ("The commonly cited reason behind the policy is to prevent the jury in the personal injury action from becoming aware that the defendant tort-feasor is insured and thereby possibly awarding a larger verdict under the 'deep pockets' theory."). That said, Lindroth's argument weighs neither for nor against abstention because to the extent that this Court may exercise jurisdiction, a stay is appropriate pending at least the outcome of the Lindroth Appeals. See *Great W. Cas. Co. v. Fredrics*, 2011 WL 5326236, at *4 (W.D.N.C. Nov. 4, 2011) (staying an interpleader action while the parties litigated the issue of liability in state court). Exercising jurisdiction any earlier would be premature because if the Illinois Appellate Court reduced the judgment such that it dropped below the value of the Stake, the Court's distribution of the Stake could change entirely based on the order of the insurers' obligations. Even if the Court did not abstain on the basis of the

---

[4] Lindroth further explains that he has been joined as a nominal party in the Coverage Action because, although neither MPEA nor GES seek recovery against him, they do seek to bind him to the relief sought against Coastal, Hartford Fire and Twin City.

Coverage Actions, Lindroth would not be able to assert claims to the Stake any earlier than he would be able to pursue a direct action against the insurers in state court. Thus, the Court concludes that the claims of all parties in interest can satisfactorily be adjudicated in the state court proceedings. Meanwhile, the third factor—whether the underlying dispute concerns a matter of state law—also weighs in favor of abstention, as both the state and federal actions are governed by state substantive contract, insurance, and tort law.

Overall, the core inquiry is "whether the questions in controversy between the parties to the federal suit * * * can better be settled in the proceeding pending in the state court." *Arnold*, 752 F.3d at 707 (quoting *Wilton*, 515 U.S. at 282 (quoting *Brillhart*, 316 U.S. at 495)) (internal quotation marks omitted). As the Court's application of the four factors above indicates, the state courts are better suited to address the issues in this litigation in many respects. Moreover, the relative progress of the state court litigation weighs in favor of abstention. The state courts began adjudicating the Coverage Actions approximately four years before this case began. The state court records—both hundreds of pages long—indicate that the Coverage Actions have passed the summary judgment stage and are approaching trial. Meanwhile, this Court is still in the pleadings stage.

That said, the purpose of interpleader—to consolidate the adjudication of multiple adverse claims to a single stake—may weigh against abstention. At this time, it is difficult to determine whether and to what extent the Stake is realistically subject to multiple adverse claims, given the pending nature of the state court actions. A decision to vacate the Lindroth Judgment, for example, could moot this action. Moreover, an alteration of the judgment could bear significantly on who owes who what. Meanwhile, Lexington suggests that it does not have a present claim to the funds but might depending on how the litigation proceeds in state court. Thus, although abstention is likely warranted for the reasons stated above, a formal decision to

abstain at this stage is premature. Instead, the Court will deny Defendants' motions to dismiss [65, 69, 73, 74, 75] without prejudice and will stay the litigation pending the outcome of at least the *Lindroth* Appeals. At that time, depending on the disposition of the appeals and stage of the Coverage Actions and any findings made therein, the Court will reassess whether dismissal and/or abstention is appropriate.

## IV.    Conclusion

For the reasons stated above, the Court denies Defendants' motions to dismiss [65, 69, 73, 74, 75] without prejudice and stays the case pending, at least, the disposition of the *Lindroth* appeals. The Court directs the parties to file joint status reports no later than 7 days after (1) the Illinois Appellate Court rules on the *Lindroth* appeals and (2) the Circuit Courts issue any further orders in the Coverage Actions that may affect this litigation.


Dated:  June 30, 2015                                       _____
                                                            Robert M. Dow, Jr.
                                                            United States District Judge